**HAZLETON AREA SCHOOL DISTRICT**

v.

**Robert A. BOSAK, Individually; William D. Bast and Associates, P.C.; William D. Bast, Individually; Lambert and Intreri, Inc.; United States Fidelity and Guaranty Company; and State Public School Building Authority,**

**Robert A. Bosak, Appellant.**

**ROBERT A. BOSAK & ASSOCIATES, Appellant,**

v.

**HAZLETON AREA SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1995.

Decided Feb. 6, 1996.

Mark F. Brancato, for Appellant.

Conrad A. Falvello, for Appellee.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

In these consolidated appeals,[1] Robert A. Bosak appeals from the January 27, 1995 order of the Court of Common Pleas of Luzerne County (trial court) which denied and dismissed his preliminary objections to a complaint filed by the Hazleton Area School District (School District). Robert A. Bosak & Associates (RBA) appeals from the same order of the trial court which denied its petition to compel arbitration. We affirm with respect to both appeals.

---

1. These consolidated appeals were argued seriately with *State Public School Building Authority* *v. Hazleton Area School District* (790 C.D.1995).

In September 1988, a written agreement was entered into between the School District and RBA [2] (1988 agreement) for the design, engineering and construction of a new high school in Hazleton, Pennsylvania. The 1988 agreement included the following arbitration provision:

> Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration ... unless the parties mutually agree otherwise.... Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association.... No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined.

Reproduced Record (R.) at 83a–84a.

Subsequent to the execution of the 1988 agreement, the School District obtained funding from the State Public School Building Authority (SPSBA) for the construction of the new high school. The SPSBA required that another agreement be signed by the SPSBA, the School District and RBA. This second agreement was executed in November 1989 (1989 agreement) and covered, *inter alia*, the same services which RBA was required to provide pursuant to the 1988 agreement. The 1989 agreement included the following arbitration provision:

> Should any dispute concerning the subject matter of this AGREEMENT arise between the parties hereto, such dispute shall be referred to the American Arbitration Association and shall be settled in

accordance with the American Arbitration Association's Rules and Regulations.

R. at 105a.

The School District began occupying the completed high school in September 1993. On January 18, 1994, the roof of the new high school collapsed under the weight of snow.

On July 15, 1994, the School District filed a complaint with the trial court seeking damages for the collapse of the roof. The School District alleged the existence of defects in the design and/or construction of the high school. The defendants named in the complaint were: (1) Robert A. Bosak, individually, as architect and engineer; (2) William D. Bast, individually, as engineer; (3) William D. Bast and Associates, P.C., as consulting engineers; (4) Lambert and Intreri, Inc., as general contractor; (5) United States Fidelity and Guaranty Company, as construction bonding insurance company acting as surety for services performed by the general contractor; and (6) the SPSBA (collectively, Defendants).

On August 16, 1994, Bosak, in his individual capacity, filed with the trial court preliminary objections to the School District's complaint. In his objections, Bosak stated that he never undertook to perform architectural and engineering services for the new high school in his *individual* capacity. Rather, work on the new high school was performed by *RBA* pursuant to the 1988 and 1989 agreements. As such, Bosak stated in his preliminary objections that this dispute should be governed by the arbitration provisions of those agreements.[3]

Subsequently, on August 30, 1994, RBA filed with the trial court a petition to compel arbitration pursuant to section 501(a) of the Uniform Arbitration Act (Act), 42 Pa.C.S. § 7304.[4] RBA sought an order compelling

---

**2.** RBA is a sole proprietorship owned by Robert A. Bosak. Notes of Testimony (N.T.), October 6, 1994, p. 7. Bosak had four full-time and two part-time employees working for him. N.T., October 6, 1994, p. 8.

**3.** We note that Bosak set forth five preliminary objections to the School District's complaint. Only his objection relating to the arbitration provisions of the 1988 and 1989 agreements is rele-

vant to the proceedings before this court. Accordingly, Bosak's other objections will not be addressed.

**4.** Section 501(a) of the Act, 42 Pa.C.S. § 7304, states in pertinent part as follows:

> (a) **Compelling arbitration.**—On application to a court to compel arbitration made by a party showing an agreement described in sec-

the School District to proceed with arbitration of its claims against RBA in accordance with the arbitration provisions of the 1988 and 1989 agreements.[5]

On October 6, 1994, a hearing was held before the trial court on Bosak's preliminary objections to the School District's complaint and on RBA's petition to compel arbitration. The trial court made the following relevant findings of fact.

The School District's complaint set forth causes of action in negligence against Bosak, individually, and others who were not parties to the 1988 or 1989 agreements. The School District has not alleged that it entered into an agreement with Bosak, individually.[6] In its complaint, the School District sought non-contract damages from the defendants. The recovery of such damages was not included in the terms of the 1988 or 1989 agreements and did not constitute the basis of consideration for either agreement. The School District did not draft the 1988 agreement or the 1989 agreement. In its complaint, the School District further alleged that its causes of action did not accrue until after it had begun to occupy the high school in September 1993.

Neither the 1988 agreement nor the 1989 agreement states that a claim for negligence or tort liability is cognizable under its arbitration provision. The 1988 agreement provides for the arbitration of claims among non-agreement parties only if all parties, including the School District and the non-agreement parties, consent. The School District's filing of its complaint was a de facto denial of permission to arbitrate this multi-party claim. The 1988 agreement does not address the resolution of multi-party claims when all parties, including those who are not parties to the agreement, do not consent to arbitration. In this case, neither the School District nor parties outside of the 1988 agreement have consented to arbitration of this dispute.

In its petition to compel arbitration, RBA did not assert any claim, contract or otherwise, against the School District. RBA has also not filed any request for arbitration with the American Arbitration Association. Moreover, RBA has not stated whether the arbitration provision in the 1988 agreement or the arbitration provision in the 1989 agreement is applicable to the present case. The arbitration provisions in the 1988 and 1989 agreements are different in their terms and parties. There are no oral or written addenda to either agreement.

■ Based upon witness testimony, as well as the 1988 and 1989 agreements, the trial court found that the evidence indicated at least a prima facie case of professional negligence by Bosak, not contemplated by the 1988 and 1989 agreements. By revised order dated January 27, 1995,[7] the trial

tion 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.

5. On August 30, 1994, Bosak also filed with the trial court a petition for consolidation of actions pursuant to Pennsylvania Rule of Civil Procedure No. 213. Rule 213 provides, in pertinent part, as follows:

(a) In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated,

and may make orders that avoid unnecessary cost or delay.
Bosak requested an order consolidating the School District's action against the defendants with RBA's petition to compel arbitration. The trial court denied and dismissed Bosak's petition for consolidation of actions because of Bosak's failure to establish any of the criteria under Pa. R.C.P. No. 213 regarding consolidation and/or because RBA's petition to compel arbitration failed to state a cause of action, thereby making consolidation moot.

6. The trial court noted that if Bosak had signed the 1988 and 1989 agreements in his representative capacity for RBA, as he claimed that he had done, then an action against Bosak, individually, could not be arbitrated because he, individually, would not be a party to agreements with arbitration provisions.

7. We note that the trial court's revised order dated January 27, 1995 merely corrected a typographical error which had been made on the

court: (1) denied and dismissed Bosak's preliminary objections to the School District's complaint because the claims set forth in the complaint were outside of the scope of the arbitration provisions; and (2) denied RBA's petition to compel arbitration because it failed to set forth a claim or cause of action that fell within the scope of the arbitration provisions. Bosak now appeals the trial court's denial of his preliminary objections to the School District's complaint[8] and RBA appeals the trial court's denial of its petition to compel arbitration.

In these consolidated appeals, the following issues have been presented for our review: (1) whether the trial court erred by failing to enforce the arbitration provisions of the 1988 and 1989 agreements and by failing to compel arbitration of the School District's tort claims which arose from, related to and otherwise concerned the subject matter of the 1988 and 1989 agreements; (2) whether the Act requires claims against an agent to be submitted to arbitration against a principal where the claims against the agent arise solely from work he performed on behalf of the principal under the 1988 and 1989 agreements, and the claims otherwise are arbitrable against the principal; and (3) whether the trial court erred by denying RBA's petition to compel arbitration on grounds that are not mandated by the Act where RBA made the requisite showings under section 7304(a) of the Act.

■ Initially, we note that our scope of review of a decision by a trial court is limited to a determination of whether the trial court violated constitutional rights, abused its discretion or committed an error of law. *Long v. Thomas*, 152 Pa.Cmwlth. 416, 619 A.2d 394 (1992), *petition for allowance of appeal denied*, 535 Pa. 641, 631 A.2d 1012 (1993). Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *Bower v. Bower*, 531 Pa. 54, 611 A.2d 181 (1992). The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Firing v. Kephart*, 466 Pa. 560, 563, 353 A.2d 833, 835 (1976).

■ Bosak and RBA argue that the parties to the 1988 and 1989 agreements did not confine the scope of the arbitration provisions in those agreements to claims sounding in contract. Rather, the parties broadly agreed to arbitrate any dispute or claim arising from, relating to or otherwise concerning the subject matter of the agreements. Since the School District's tort claims against Bosak dealt with services which were provided pursuant to the 1988 and 1989 agreements, Bosak and RBA assert that those claims were governed by the arbitration provisions of the agreements. We disagree.

■ Arbitration is a matter of contract and, as such, in construing the language of an arbitration provision, courts must resort to the rules of contractual construction.[9]

trial court's original order dated January 26, 1995.

8. Denial of preliminary objections is ordinarily an interlocutory order not subject to immediate appeal. Nonetheless, Bosak filed a notice of appeal with respect to the trial court's denial of his preliminary objections.

By order dated March 8, 1995, this court stated that the issues on appeal to this court would be limited to those challenging or defending that portion of the trial court's order which had denied RBA's petition to compel arbitration. In its March 8, 1995 order, this court also *sua sponte* consolidated Bosak's appeal from the denial of his preliminary objections to the School District's complaint with RBA's appeal from the denial of its petition to compel arbitration.

On March 22, 1995, Bosak filed an application for reconsideration of this court's March 8, 1995 order. By order dated April 12, 1995, this court granted Bosak's request for reconsideration. In its April 12, 1995 order, this court also stated that the portion of the trial court's order which had denied Bosak's preliminary objections was interlocutory but appealable as of right pursuant to Pa.R.C.P. No. 1028(a)(6), 42 Pa.C.S. § 7320 and Pa.R.A.P. 311(a)(7).

We note that Pa.R.C.P. No. 1028(a)(6) provides that a preliminary objection may raise the "pendency of a prior action or agreement for alternative dispute resolution." In addition, 42 Pa.C.S. § 7320 provides that an order denying a petition to compel arbitration is appealable. Finally, Pa. R.A.P. 311(a)(7) permits an appeal as of right where "[a]n order is made appealable by statute or general rule."

9. We note that our Supreme Court has stated that the issue of whether a dispute is one that is covered by the terms of an arbitration agreement is for a court to determine. *Flightways Corp. v.*

*Lincoln University of the Commonwealth v. Lincoln University Chapter*, 467 Pa. 112, 354 A.2d 576 (1976). The language of a contract should be construed with the intent of the parties as the paramount consideration. *Unit Vending Corporation v. Lacas*, 410 Pa. 614, 190 A.2d 298 (1963); *Emlenton Area Municipal Authority v. Miles*, 378 Pa.Superior Ct. 303, 548 A.2d 623 (1988), *petition for allowance of appeal denied*, 522 Pa. 613, 563 A.2d 498 (1989). In order to determine the intent of parties to a contract, a court should look to the four corners of the document and its express language. *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986); *PBS Coal, Inc. v. Hardhat Mining, Inc.*, 429 Pa.Superior Ct. 372, 632 A.2d 903 (1993).

■■■ We recognize that the law favors settlement of disputes by arbitration and seeks to promote swift and orderly disposition of claims. *Flightways Corp.* At the same time, our Supreme Court has stated that a court must be careful not to extend an arbitration agreement by implication beyond the clear, express and unequivocal intent of the parties as manifested by the writing itself. *Emmaus Municipal Authority v. Eltz*, 416 Pa. 123, 204 A.2d 926 (1964). Because arbitration is a matter of contract, a particular issue cannot be arbitrated absent an agreement between the parties to arbitrate that issue. *Lincoln University.* Our Supreme Court has stated that judicial inquiry as to whether arbitration is appropriate is limited to the following questions: (1) whether an agreement to arbitrate was entered into; and (2) whether the involved dispute comes within the ambit of an arbitration provision. *Flightways Corp.*

In this case, the arbitration provision in the 1988 agreement states that claims or disputes arising out of or relating to the agreement, or its breach, shall be decided by arbitration. R. at 83a. Similarly, the arbitration provision in the 1989 agreement states that any dispute concerning the subject matter of the agreement shall be referred to the American Arbitration Association. The School District in this case has not asserted claims against Bosak concerning the agreements or their breach. Rather, the School District filed a complaint against Bosak in which it specifically alleged tort claims for professional negligence. R. at 21a–27a. Neither the 1988 agreement nor the 1989 agreement specifically states that an action in tort for negligence should be arbitrated.

■■■ We recognize that, in some situations, arbitration provisions in a contract may, in fact, cover tort actions for negligence. In *Muhlenberg Township School District Authority v. Pennsylvania Fortunato Construction Co.*, 460 Pa. 260, 333 A.2d 184 (1975), a township school district authority filed a complaint to enjoin a construction company from seeking arbitration of matters in dispute under its contract. The contract between the authority and the construction company provided that "[s]hould either party to this Contract suffer damage in any manner because of the wrongful act *or neglect* of the other party ... claims ... shall be adjusted by agreement or arbitration." *Muhlenberg Township*, 460 Pa. at 264, 333 A.2d at 186 (emphasis added). Our Supreme Court concluded that this contractual language was completely inclusive and meant that *all* claims, including tort claims, were to be resolved through arbitration. *Id.*

In the present case, the arbitration provisions in the agreements specify that disputes concerning the agreements are to be resolved through arbitration. However, unlike *Muhlenberg Township*, the arbitration provisions in the agreements do not encompass tort claims. As we have already noted, arbitration provisions are not to be extended by implication beyond the clear provisions of an agreement. As such, the arbitration provisions in the 1988 agreement and the 1989 agreement cannot be extended to encompass tort claims by the School District.

■■■ The distinction between tort claims and contract claims is highlighted by the different policy considerations underlying tort law and contract law. The policy consideration underlying contract law is the

protection of expectations which had been bargained for by the parties to a contract. Restatement (Second) of Contracts § 344 (1979); *Palco Linings, Inc. v. Pavex, Inc.*, 755 F.Supp. 1269, 1271 (M.D.Pa.1990). It is necessary to determine whether losses incurred by a party were contemplated by the parties at the time that the contract was executed. *Palco*, 755 F.Supp. at 1271.

In contrast, the policy consideration underlying tort law is the protection of persons and property from losses resulting from injury to that person or property. Restatement (Second) of Torts § 901 (1977); *Palco*. To recover in negligence, there must be a showing of harm above and beyond disappointed expectations. *Palco*, 755 F.Supp. at 1271.

The purpose of the 1988 and 1989 agreements was to set forth the duties and obligations of the parties with respect to the construction of a new high school. The School District expected that it would pay approximately $13 million for the construction and, in return, would have a new school building. Nothing in either of the agreements indicates that the parties contemplated the possibility that the School District would have to pay over $2.5 million dollars to repair the new high school's roof after it collapsed. The trial court found that the damages which were sought by the School District in its complaint were not part of the terms of either of the agreements and did not form the basis of consideration for either agreement. The School District has alleged harm above and beyond disappointed expectations. Accordingly, the School District's claims constitute a tort action for negligence rather than an action for breach of contract.

Bosak asserts that broadly stated arbitration provisions are to be given the most expansive construction possible. He relies upon *Ambridge Borough Water Authority* and *Wyoming Radio, Inc. v. National Association of Broadcast Employees & Technicians*, 398 Pa. 183, 157 A.2d 366 (1960) to support his position. We conclude that these cases are not controlling because they involved disputes that related to specific contractual claims not to tort claims.

In *Ambridge Borough Water Authority*, the controversy centered around an employee's claims for compensation and accrued vacation which he was supposed to receive, pursuant to an employment contract, upon the termination of his employment. Our Supreme Court concluded that the dispute, which involved the interpretation of the employment contract, must be arbitrated in accordance with the arbitration clause in the contract. *Ambridge Borough Water Authority*, 458 Pa. at 551–52, 328 A.2d at 501–02.

Similarly, in *Wyoming Radio*, the controversy centered around whether a radio show host, who was not a union member, should be allowed to perform "on-the-air" announcing, which, pursuant to a collective bargaining agreement between the radio station and its labor union, was restricted to staff employees of the radio station. Our Supreme Court concluded that the dispute was one which specifically related to the terms of the collective bargaining agreement and, as such, had to be arbitrated. *Wyoming Radio*, 398 Pa. at 188, 157 A.2d at 368.

In both of these cases, the controversies focused upon the interpretation of specific contractual provisions. In contrast, the present case does not involve a dispute as to how a contractual provision is to be interpreted. Rather, the School District has asserted tort claims sounding in negligence for which arbitration is not appropriate.

Accordingly, paragraph 1 of the trial court's order, which denied RBA's petition to compel arbitration, and paragraph 4(a) of the trial court's order, which denied and dismissed of Bosak's preliminary objections, are affirmed.[10]

### ORDER

NOW, this 6th day of February, 1996, it is hereby ordered:

1. Paragraph 1 of the order of the Court of Common Pleas of Luzerne County, dated

---

**10.** Given our determination that the School District's claims are not subject to the arbitration provisions of the 1988 and 1989 agreements, we need not address the other issues which have been raised in the appeals before this court.

January 27, 1995, at No. 4814–C of 1994, which denied the petition to compel arbitration filed by Robert A. Bosak & Associates, is affirmed.

2. Paragraph 4(a) of the order of the Court of Common Pleas of Luzerne County, dated January 27, 1995, at No. 3868–C of 1994, which denied and dismissed the preliminary objections filed by Robert A. Bosak, is affirmed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The majority holds that a cause of action for negligent performance under a contract is not subject to the arbitration provision of that contract. By so holding, not only does the majority contravene the express terms of the arbitration provision at issue in this case, but it also allows one party of an arbitration agreement to frustrate that agreement by asserting a cause of action against the sole proprietor of the other party to the agreement.

In September, 1988, a written agreement (1988 agreement) was executed between the Hazleton Area School District (School District) and Robert A. Bosak & Associates (RBA), a sole proprietorship owned by Robert A. Bosak (Bosak), by which RBA agreed to provide architectural services for the design, engineering, and construction of a new high school in Hazleton, Pennsylvania. The 1988 agreement included the following arbitration provision:

Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration ... unless the parties mutually agree otherwise.... Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association.... No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined.

Additionally, as a condition upon the School District receiving funding from the State Public School Building Authority (SPSBA) for the construction of the high school, the SPSBA required the execution of another agreement between itself, the School District and RBA (1989 agreement). The 1989 agreement covered the same services that RBA was to provide under the 1988 agreement and also contained the following arbitration provision:

Should any dispute concerning the subject matter of this AGREEMENT arise between the parties hereto, such dispute shall be referred to the American Arbitration Association and shall be settled in accordance with the American Arbitration Association's Rules and Regulations.

In September, 1993, the School District began occupying the completed high school. After its roof collapsed under the weight of snow on January 18, 1994, the School District filed a complaint with the Court of Common Pleas of Luzerne County (trial court) seeking damages for the collapse of the roof. In the complaint, the School District named numerous defendants including Bosak, the architect and engineer of the high school. It did not name RBA as a defendant. Bosak, doing business in the name of his sole proprietorship, RBA, filed a petition to compel arbitration pursuant to Section 501(a) of the Uniform Arbitration Act (Act), 42 Pa.C.S. § 7304. Citing to the arbitration provisions of the 1988 and 1989 agreements, RBA requested the trial court to issue an order compelling the School District to proceed to arbitration.

In addition to filing the petition under the name of RBA, Bosak, in his individual capacity, filed preliminary objections to the School District's complaint, contending that he never performed architectural or engineering services for the School District. Pursuant to the 1988 and 1989 agreements, Bosak argued, RBA undertook to perform such services for the School District. As such, Bosak contended that the dispute was governed by the arbitration provisions of those agreements.

The trial court, concluding that the arbitration provisions did not encompass claims for negligence or tort liability, denied RBA's petition and Bosak's preliminary objections. Affirming the trial court, the majority concludes that the 1988 and 1989 agreements do not specifically state that an action in tort for negligence must be arbitrated. Because the School District's claims against Bosak and RBA were for professional negligence, the majority holds that they do not concern the agreements or breach thereof, and therefore, does not fall within the ambit of the arbitration provisions of the 1988 and 1989 agreements.

Here, no party argues that an arbitration agreement does not exist. Consequently, in determining whether a particular dispute must be submitted to arbitration pursuant to the terms of an arbitration agreement, our inquiry is limited to whether the dispute at issue is encompassed by the terms of that agreement. *PBS Coal, Inc. v. Hardhat Mining, Inc.*, 429 Pa.Superior Ct. 372, 632 A.2d 903 (1993). In making this determination, this Court must be mindful of the fact that the law favors the resolution of disputes through arbitration. *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 331 A.2d 184 (1975). While this Court may not, by implication, extend the arbitration agreement beyond the clear, express and unequivocal intent of the parties as manifested therein,[1] it must nevertheless give liberal construction to the scope of the arbitration agreement. *Chester City School Authority v. Aberthaw Construction Co.*, 460 Pa. 343, 333 A.2d 758 (1975).

In the present case, the arbitration provision of the 1988 agreement between the School District and RBA specifically provides that all disputes "arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration." Similarly, the 1989 agreement between the School District, the SPSBA, and RBA provides that "[s]hould any dispute concerning the subject matter of this AGREEMENT between the parties hereto, such dispute shall be referred to the American Arbitration Association." The School District's cause of action against

RBA is premised upon its alleged negligent performance *under the contract.* As such, and because the arbitration provisions of the 1988 and 1989 agreements do not exempt negligent acts from their coverage, the School District's claims arise out of and relate to the agreement between the parties, and therefore, are subject to and must be decided by arbitration.

Additionally, by allowing the cause of action to proceed against Bosak, the majority's opinion permits the School District to circumvent the arbitration provisions of the 1988 and 1989 agreements. As the School District argues, because RBA is a sole proprietorship owned and operated by Bosak, they are one in the same. As such, any claims against Bosak, including those alleging professional negligence on his part, directly arise out of and relate to the agreements between the School District and RBA, Bosak's sole proprietorship. Just as the School District's claims against RBA must be submitted to arbitration, any claims it attempts to assert against Bosak relating to the 1988 and 1989 agreements are likewise subject to arbitration.

Because the School District's claims against RBA and Bosak relate to the 1988 and 1989 agreements, and thus, are subject to the arbitration provisions of those contracts, I would reverse the trial court.

---

1. *Emmaus Municipal Authority v. Eltz,* 416 Pa.     123, 204 A.2d 926 (1964).