J-A12045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARYANNE GALLAGHER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M. GALLAGHER & F. MANCUSO | : | |
| PARTNERSHIP, ROBIN MANCUSO | : | |
| DELUNA, JAMIE MANCUSO, FRANK | : | No. 3533 EDA 2017 |
| MANCUSO AND CROSS KEYS | : | |
| MANAGEMENT, INC. | : | |
| | : | |
| | : | |
| APPEAL OF: ROBIN MANCUSO | : | |
| DELUNA, JAMIE MANCUSO AND | : | |
| FRANK MANCUSO | : | |

Appeal from the Order Entered October 12, 2017
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2016-07570

BEFORE: BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 05, 2018**

A valid agreement to arbitrate exists between Frank and Maryanne. However, Robin and Jamie are not signatories to the Partnership Agreement that contains the arbitration clause. To the extent that they seek to compel Maryanne to arbitrate her claims against them, they must first demonstrate that they can avail themselves of the arbitration clause and, secondly, that the dispute falls within its scope.

My colleagues frame the issue herein as solely one involving the scope of the arbitration provision, and fail to ascertain first whether there is a valid

agreement among the parties. Since the dispute is not limited to Maryanne and Frank and their partnership, but the combined conduct of Frank and third parties not subject to the arbitration clause, the majority concludes that these **claims** fall outside the scope of the arbitration provision. Moreover, because these parties allegedly acted in concert, the majority adopts the reasoning of the trial court that "bifurcation of these proceedings would frustrate the public policy goal" of "swift and efficient judicial decision making[,]" and its reliance upon our sister court's decision in *Sch. Dist. Of Philadelphia v. Livingston-Rosenwinkel, P.C.*, 690 A.2d 1321 (Pa.Cmwlth. 2013), in affirming the order denying arbitration of the claims at issue. Trial Court Opinion, 12/22/17, at 8.

In my view, two of the claims against Frank are contemplated within the scope of the arbitration clause. The arbitration provision in the Partnership Agreement to which he was a signatory mandates arbitration for a "controversy or claim arising out of this Partnership Agreement." Partnership Agreement, at ¶10.1. At Count I, Maryanne seeks damages for Frank's breach of the Partnership Agreement, *i.e*., his withdrawal from the Partnership without giving Maryanne notice of his intent to do so and the opportunity to purchase his interest. I submit that the breach of contract claim against Frank falls squarely within the scope of the arbitration clause, that it is severable, and that it should be disposed of in arbitration. To the extent that Frank

violated his fiduciary duties to Maryanne when he secretly sold part of his partnership interest to Robin and Jamie, the issue is arbitrable.

Robin and Jamie seek to compel arbitration of claims that they colluded or conspired with Frank in that conduct. However, they are not signatories to the Partnership Agreement, and for purposes of the breach of contract claim, they were not alleged to be agents or employees of Frank who would be bound by the arbitration agreement. ***See Provenzano v. Ohio Valley Gen. Hosp.***, 121 A.3d 1085 (Pa.Super. 2015) (where an "obvious and close nexus" exists between the non-signatories and the contract or the contracting parties, such as "the relationship between a signatory principal and a non-signatory agent[,]" if the principal is bound, the non-signatory agents and employees are bound and can enforce the agreement). The fact that the claims against Robin and Jamie are interwoven with the claim against Frank is not a sufficient basis for mandating arbitration for reasons *infra*. ***Id***. at 1097. Thus, as to Count I, I believe only the breach of contract claim against Frank should proceed in arbitration.

Count II is a claim for unjust enrichment against Frank, Robin, and Jamie, based upon the excessive fees that CK Management charged the Partnership for back office services. As I read the complaint, Maryanne seeks damages flowing from Frank's conduct, in conjunction with Robin and Jamie, on behalf of CK Management, rather than the Partnership. Even if there was an agreement to arbitrate between Maryanne on the one hand, and Robin and

Jamie on the other, a position the record does not support, these claims fall outside the scope of the arbitration provision. Moreover, I agree with my colleagues that the claim against Frank is outside the scope of the arbitration provision.

Finally, Count V is a claim for breach of fiduciary duty by Maryanne against Frank, Robin, and Jamie based on CK Management's excessive fees charged to the Partnership. Maryanne alleged that Frank, Robin, and Jamie drained funds from the Partnership that rightfully belonged to her. Implicated is Frank's fiduciary duty to Maryanne and the Partnership, which in my view, is governed by the arbitration clause. Although Robin and Jamie only owe fiduciary duties to Maryanne if they are partners under the Partnership Agreement, Maryanne pleads for purposes of this breach of fiduciary claim that they are partners. Thus, I believe these claims are arbitrable.

I acknowledge that my proposed disposition, which involves bifurcation of claims, would tend to undermine our public policy goal of "swift and efficient judicial decision making[,]" and result in piecemeal litigation. *See* Trial Court Opinion, 12/22/17, at 8. However, our Supreme Court held in ***Taylor v. Extendicare Health Facilities, Inc.***, 147 A.3d 490 (Pa. 2016), that the policy underlying the Federal Arbitration Act ("FAA") trumps those concerns. In ***Taylor***, the Court held that although wrongful death claims were not subject to an agreement to arbitrate, and Pennsylvania rules mandated that wrongful death and survival actions be tried together, the FAA pre-empted our

state law and required that arbitrable survival claims be severed and transferred to arbitration. In arriving at its holding, our Supreme Court relied upon the U.S. Supreme Court's decision in **KPMG LLP v. Cocchi**, 132 S.Ct. 23, 26 (2011), for the proposition that:

> When a complaint contains both arbitrable and nonarbitrable claims, the Federal Arbitration Act (FAA), 9 U.S.C.S. §§ 1 - 14, requires courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums. The FAA requires piecemeal resolution when necessary to give effect to an arbitration agreement.

In **Taylor**, our High Court pointed to **Dean Witter Reynolds, Inc. v. Byrd**, 470 U.S. 213, 218 (1985), where the United States Supreme Court approved of bifurcation to give effect to an arbitration clause, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." **See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 20 (1983) ("[The FAA] requires piecemeal resolution when necessary to give effect to an arbitration agreement.").

In the nursing home arbitration cases, wrongful death and survival claims often involve the combined negligence of several actors resulting in death or serious injury. It is not unusual for some of the parties to be subject to an arbitration agreement, while others are not. Despite the fact that much of the proof is overlapping, our High Court has ordered that claims be bifurcated to give effect to the arbitration agreements in accordance with **Taylor**, even at the risk of duplication of damages and inconsistent verdicts.

*See e.g. Tuomi v. Extendicare, Inc.*, 119 A.3d 1030 (Pa.Super. 2015), *vacated and remanded*, **Tuomi v. Extendicare, Inc.**, 2016 Pa. LEXIS 2565 (Pa. 2015).

Despite piecemeal litigation, duplicative proof, and the potential for inconsistent verdicts, I believe **Taylor** mandates bifurcation on the facts herein to give effect to the arbitration provision. Moreover, I question the vitality of our sister court's decision in **Sch. Dist. Of Philadelphia**, **supra**, and the majority's reliance upon it, after **Taylor**.

For the foregoing reasons, I concur in the majority's affirmance of the trial court's refusal to compel arbitration of Count II in its entirety, as well as the claims against Robin and Jamie in Count I. I am constrained to dissent from my colleagues' refusal to sever and transfer to arbitration the claims against Frank in Count I, and all claims in Count V.